**In re FLORIDA EAST COAST RY. CO.**

**ATLANTIC COAST LINE R. CO. v. ST. JOE PAPER CO. et al.**

No. 14163.

United States Court of Appeals
Fifth Circuit.

Jan. 19, 1953.

Rehearing Denied March 2, 1953.

See also, 201 F.2d 332.

Edward W. Bourne, New York City, Charles Cook Howell and R. B. Gwathmey, Wilmington, N. C., Charles Cook Howell, Jr., Jacksonville, Fla., for appellant.

Giles J. Patterson, Jacksonville, Fla., Miller Walton, Miami, Fla., Howard P. Macfarlane, Tampa, Fla., Donald Russell, Spartanburg, S. C., Clifton S. Thomson, New York City, Sidney S. Alderman and Edward J. Hickey, Jr., Washington, D. C., Cyril C. Copp, Chester Bedell, Henry P. Adair, David Russell and Clarence G. Ashby, Jacksonville, Fla., J. R. Turney, Washington, D. C., Guy W. Botts, Jacksonville,

Fla., Henry L. Walker, Washington, D. C., H. P. Osborne, Jacksonville, Fla., Walter H. Brown, Jr., and Harold J. Gallagher, New York City, for appellees.

J. Turner Butler, Jacksonville, Fla., and Fred N. Oliver and Willard P. Scott, New York City, for Lynch Interests.

Russell L. Frink, Jacksonville, Fla., for debtor's trustees.

Before HUTCHESON, Chief Judge, and HOLMES, BORAH, RUSSELL, and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

On the former appearance of this case here, all the controlling questions of law presented on this appeal were considered and determined, and what we write with respect to them this time will be but a re-threshing of old straw. Because this is so, and particularly because the judgment appealed from and the reasons given in support of it in the trial judge's opinion [1] run counter to, indeed, if given effect would rewrite, the law of the case as we have declared and established it, a brief résumé of what has gone before will go far to dispose of this appeal.

When the cause was here before on an appeal from an order disapproving a plan of reorganization adopted by a six to five vote and referring the proceedings back to the commission for further effort to make a proper plan,[2] this court, one judge dissenting, ordered the judgment affirmed.

As will appear from even the most cursory reading of the three opinions [3] written in this court, while only one of the judges agreed with the trial judge throughout, the other two did agree with his view of the relation of commission and court in a Section 77 reorganization proceeding. This was: that the congress had by statute brigaded commission and court, with the commission in the lead; that to the informed discretion of the commission it had confided the determination of the question of compatibility of the plan with the public interest; and that, except as to the question of unconstitutional taking, it had also con-

1. In re Florida East Coast Railway Co., D.C., 103 F.Supp. 825.

2. In re Florida East Coast Railway Co., D.C., 81 F.Supp. 926.

3. Atlantic Coast Line Ry. Co. v. St. Joe Paper Co., 5 Cir., 179 F.2d 538.

fided to the commission the question of valuation.[4]

The two judges who voted for affirmance of the judgment agreed that on the record then made, the trial judge was right, in characterizing the plan, as having been determined upon without a sufficient showing of a due recognition of the rights and equities of the bondholders, and in determining that the plan was not fair and equitable, but was one which, if carried out, would result in depriving them of their property without just compensation. It was on this ground, with which we agreed, that agreement to affirm the judgment was reached.

Two of the judges, the writers of the prevailing and dissenting opinions, were in general agreement with each other that under subsection (b), expressly providing for a merger, the commission, without the consent, indeed over the opposition, of substantially all of the 5 percent bondholders, could lawfully propose and approve a plan providing for what the trial judge called a "forced merger", that is a merger of East Coast and Coast Line. They were, therefore, united in disagreeing with the view advanced by the trial judge that the commission could not do so.

These two judges differed with each other only in this. The dissenting judge thought and said: that the commission could do this, and in this case had properly done so; and that the trial judge was wrong in disapproving the plan. The writer of the prevailing opinion, though in full agreement with the dissenting judge, that the commission could propose and approve such a plan, thought and said: that the trial court's judgment disapproving the plan should be affirmed not because the plan provided for such a merger, but because, on the record showing that substantially all the bondholders opposed it, it did not sufficiently appear that the constitutional right of the bondholders to receive the equivalent of what they were required to surrender was fully accorded. He was of the opinion, in short: that the record showed that the plan had been arrived at without that due consideration of the rights of the bondholders which would assure that they would certainly receive the equivalent of what they were to surrender; and that this was due to the too intense preoccupation on the part of a bare majority of the commission with the merger feature of the plan.

Because there were so many areas of agreement existing not only between him and the dissenting judge, but between all of the judges, including the trial judge, the writer of the prevailing opinion undertook to point up and make them clear.

Because, too, it was claimed by the appellees that the trial judge had broadly decided that what he called a "forced merger" of the debtor with Coast Line would not be lawful under the statute merely because it frustrated the plans of some of the bondholders to reorganize in their own interest and run East Coast, the writer of the prevailing opinion took the greatest pains to point out that, and why, this was not so.[5]

4. Said the trial judge:

"* * * Neither in the hearing for approval, nor in that for confirmation notwithstanding rejection, is the judge required to consider compatibility with the public interest; though the Commission is so required. At the end of Subsection e it is provided that if it shall be necessary to determine the value of any property for any purpose the Commission shall determine the value and certify it to the court, observing certain standards as to the property used in railroad operation. I conclude that the matter of compatibility with the public interest of a plan is left to the opinion of the Commission and is not to be reviewed by the judge. Also that certifications of value by the Commis-sion are in general final if the legal standards have been observed. Both are within the peculiar expertness of the Commission. * * * I have no function to review the matter of compatibility with the public interest of the plan; or the valuation of the property involved unless on the question of unconstitutional taking of it; * * *". In re Florida East Coast Ry. Co., 81 F. Supp. at pages 931–932. (Emphasis supplied.)

5. Agreeing with the trial judge that, upon the record before him, "such a forced merger as is now proposed is contrary to the statute", the opinion, however, went on to say:

"We are in no doubt, however, that a plan providing for what the trial judge

Finally, to make assurance doubly sure; that there could and would be no basis for a misunderstanding, by the commission and the trial judge on the return of the plan to the district court, of the purport and effect of our decision, after pointing out that the commission's decision was based too much upon considerations of the public interest, too little upon an independent consideration of the interest of the bondholders, the opinion went on to say:

"We agree with the trial judge that * * * such a forced merger as is now proposed is contrary to the statute.

"In remanding the case, however, for further proceedings, we remand it for the purpose of working out a really fair and equitable plan and without prejudice in doing so to the due consideration of any fair and equitable plan for bringing this matter to an end, including such a plan providing for a merger with, or sale to, the Coast Line either with or without the approval of the security holders."

Returned to the commission, the matter was again fully heard in public hearings, which lasted for thirteen days and at which 2241 pages of testimony and 157 exhibits were added to the record. This time, upon the record as thus supplemented and in the light of our opinion, from which it quoted and to which it deferred, the commission handed down its fifth and sixth supplemental reports,[6] with an accompanying order approving by a vote of seven to three a fourth proposed plan of reorganization, and certified it to the district court for its consent.

This plan, similar in type to the third plan which was the subject of the prior opinions of this and the trial court dealt with above, provided that, with certain important exceptions, all the estate of East Coast should be vested in the Coast Line by merger, consolidation or transfer in exchange for cash to be paid and securities to be issued by the Coast Line of an amount and value found by the commission upon full and careful consideration to be at least equal to that of the securities to be exchanged therefor.

Following the certification of the plan to the district court and the filing of exceptions thereto, a hearing was had, and, on March 11, 1952, the trial judge entered an order in support of a plan proposed by him to end all commission plans. This plan was that the order, in addition to disapproving the commission's fourth plan, should dismiss the reorganization proceedings and,

---

broadly called a 'forced merger', that is, a merger over the objection of the debtor and all its creditors, might be lawfully certified to the court and lawfully approved and confirmed by it. *The trial judge, while using language broader than the precise determination before him required, recognized that this was so, in holding that the fact found by the commission, that St. Joe bought the bonds it holds with the desire and purpose to use them to own, control, and run the debtor railroad, and that the plan for merger with the Coast Line would frustrate that desire and purpose, was not a reason for refusing to approve the plan. He particularly recognized that if the evidence clearly established that the whole opposition to the plan, instead of being based upon the legitimate view that the merger with the Coast Line would not be as favorable to the rights and interest of the bondholders as an internal reorganization would be, and that the securities to be delivered to the owner under the forced merger plan are not the substan-* *tial equivalents of those they hold, was based upon such irrelevancies as desire for control, these objections would not be valid objections and the plan should be approved and confirmed over them.*

"The evidence establishes conclusively that this is not the case with the objections here. *Owners of something like $10,000,000 in amount of bonds are here protesting the plan as unfair to them, none of them asking that control of the debtor be given to St. Joe.* Some of them are, indeed, insisting that an internal reorganization would be better for their interests than an outside merger. All, however, are insisting that the proposed plan will be a forced merger giving to the Coast Line, at the expense of depriving the bondholders of their fair and equitable rights, properties worth far more than Coast Line is being required under the plan to pay the bondholders for them." 179 F.2d at page 544. (Emphasis supplied.)

6. 282 I.C.C. 81 to 191; 282 I.C.C. 195 to 226.

with the declared purpose of effecting a reorganization through a foreclosure in equity, direct the return to the equity receivership in which the properties of the debtor had been administered from August 31, 1931, to January 25, 1941.

In the opinion which formed the basis of his order, the trial judge declared himself to be in agreement with the expressed opinion of Judge Sibley and this court, that the determination of the public interest was not for the district court but was exclusively for the commission. Nevertheless, upon the basis of findings of his own, that an internal reorganization would not be contrary to the public interest and that there was no evidence to support the commission's finding that the merger as proposed by it was in the public interest and an internal reorganization as proposed by the bondholders was not, he rejected and refused to follow the commission's finding. In addition, he made findings of his own on the issue of valuation directly contrary to the findings of the commission.

On the basis of these findings, the opinion went on to declare in effect: that it was evident that the commission intended to persist in approving and presenting its plan for a merger; that, as trial judge, he could not and would not approve such a plan; that an impasse had therefore resulted; and that, because it had, the reorganization proceedings must be dismissed and a reorganization effected under the leadership of the district court in the equity receivership.

Appealing from this order, Atlantic Coast Line is here vigorously complaining of it. One of its complaints is that, in rejecting the commission's findings as to the public interest and as to valuations, and in substituting his own opinion therefor, and thus failing and refusing to accord to the findings of the commission in these two respects the weight and authority accorded them by the statute, the trial judge has grievously erred.

Another is that, in addition to the error of refusing to accord due weight to the commission's findings, the trial judge has committed a further and more grievous error in holding in effect that, since the

majority of the commission persists in submitting a plan for reorganization through a merger of the two companies, over the objection of the 5 percent bondholders, the leadership of the commission must be rejected, the reorganization proceeding dismissed, the long dormant equity receivership revived and reactivated, and an internal plan of reorganization, acceptable to the bondholders, must be effected under the leadership of the district judge.

We are in no doubt that, between the determination of the trial judge, on the one hand, that the reorganization must be an internal one, and his rejection, therefore, of the commission's finding that a merger was in the public interest, and the determination of the commission, in accordance with, and upon full consideration of, the record, that a merger with the Coast Line was in the public interest and an internal reorganization was not, an impasse has been reached. That this is so, however, is not at all determinative of the question presented by this appeal. This question is whose is the fault. Did the commission err in again formulating and reporting a plan for a merger with Coast Line, or did the trial judge err in disapproving such a plan and dismissing the proceedings, because of his opinion in effect: that in both the public and private interest an internal reorganization is demanded; that because of the persistence of the commission in insisting on its plan for a merger, it has become necessary for the district court to wrest the leadership from the commission in order by foreclosure to effect an internal reorganization.

If the fault is with the commission, then the judge was justified in turning elsewhere for a plan and in resorting as the first step in that direction to the statute providing for a dismissal of the reorganization proceedings. If, however, the shoe is on the other foot and the fault for the impasse was the erroneous refusal of the trial judge to follow the lead of the commission when that leadership was in accordance with law, that is when its findings were supported by the evidence, then the court was not justified in disapproving the plan and dismissing the proceedings.

Turning, for the correct answer to this question, to the record as it now stands before us, we are not in any doubt that, under the plain terms of subsection (b) (5) of Sec. 77 of the Act, 11 U.S.C.A. § 205, which provides that the plan "may include the transfer of any interest in or control of all or any part of the property of the debtor to another corporation or corporations, the merger or consolidation of the debtor with another corporation or corporations * * *", the commission was precisely authorized to formulate and recommend a plan providing, as the fourth plan does, for. the merger of East Coast and Coast Line.

It is quite plain, we think, that in finding as he did, that this record, which includes the former record with all additions to it, contains no evidence supporting the commission's finding and recommendation as to the public interest, the trial judge went contrary both to the decision of the trial judge on the former hearing and to that of this court on the former appeal.

In his opinion, Judge Sibley did not find that there was no evidence to support the commission's finding as to public interest. On the contrary, he expressly declared that its finding with respect thereto was not subject to review by him. His difference with the commission was not based upon the want of evidence to support its finding but upon the fact that the refunding bondholders by an overwhelming majority refused to consent to the merger and his view, "I do not think Congress intended to force a merger undesired by the majority in amount of the affected parties by permitting a merger to be part of a plan. * * * This conclusion * * * ends this plan." [81 F.Supp. 932.]

His rejection of the plan was not, therefore, based upon a want of evidence as to the public interest but entirely upon his view that the commission was without power under the statutes to propose a plan for what he called a "forced" merger, that is a merger *nolens volens* the security holders.

The trial judge on this hearing, recognizing the law of the case to be that the question of what was in the public interest was for the commission and not for the court, and that the commission could lawfully propose a proper plan for a forced merger, did not base his rejection of the new plan on the ground on which Judge Sibley had based his, the want of power in the commission to propose such a plan. He put it on his finding that the commission's finding as to the public interest was without evidence to support it.

We have, therefore, again carefully examined the record made in this and the former hearing, and have found: that there is abundant evidence to support the public interest finding; that the trial judge was, therefore, in error in dismissing the proceedings on that ground; and that unless an examination of the record shows, as we thought it did on the former hearing, that the bondholders will not receive under this plan the equivalent in value of what they will part with, the judgment must be reversed and the cause remanded to the district court with directions to approve the plan.

A careful comparison of the present record with that presented on the former appeal convinces us that on its subsequent hearings, the commission gave not lip service merely but whole hearted fealty to the admonitions and directions of our opinion. Instead, therefore, of failing, as we found it did before, to show that the commission had given adequate consideration, independently of the public interest question, to making sure that the bondholders would in the exchange receive the equivalent in value of the securities they surrendered, the record presented on this appeal shows a quite different situation. It shows a most careful and painstaking effort on the part of the commission to properly, adequately, and independently value both the securities held by the bondholders and those to be received by them in exchange and that its finding that the plan was fair and equitable finds full support in the evidence.

Indeed, an examination of all the testimony now available touching on and dealing with the valuations which under the statute it was for the commission to make, demonstrates, we think, beyond any peradventure that the commission's findings and estimates of the respective future earn-

ings of East Coast and Coast Line and of the present and future values of the securities to be given in exchange for each other was most favorable to the bondholders of East Coast.

The same careful examination shows that but for the fact, which apparently dominates and controls most of the bondholders in this controversy, that they are primarily concerned not with obtaining value received for their securities but with a conversion of their bonds into a title to the East Coast properties, so that they will own and manage the railroad, all of them would be bound to agree that what they will receive for their bonds under the plan will be of a value equal to, or more than, that of their bonds.

It will, therefore, serve no useful purpose for us to take up one by one, as the appellants and appellees have done, to dissect and discuss them, the findings made and reasons given by the commission, on the one hand, and those set out in the lengthy opinion of the trial judge, on the other, to determine our agreement or disagreement with each of them in turn. Particularly will it not be of any value for us to resolve the issue, of which the trial judge and the parties have made so much, whether, in determining permissible capitalizations, the commission used arbitrary multipliers, as the appellees and the trial judge say it did, or whether, as the commission [7] and the Coast

Line say, it did not. Neither will it advantage us to consider and discuss the testimony of the various witnesses, witness by witness and testimony by testimony, to compare the trial judge's conclusions as to them with those of the commission.

Too much has already been written in this case. Enough of contention, of conflict, and of name calling has already gone on without our adding more. It will suffice for us to say that, bearing in mind the controlling decisions [8] and the law of the case as determined on the former appeal, and considering the record in the light of the undoubted primacy to be given to the fact findings of the commission, we are of the clear opinion: that the findings of the trial judge, rejecting the commission's findings as to the public interest and as to valuation, and declaring that the plan is unfair and inequitable, are themselves without support in law or in fact; and that his judgment refusing to approve the plan and dismissing the reorganization proceedings may not stand.

The order appealed from will, therefore, be reversed and the cause remanded to the district court with directions to approve the plan, and to take further and not inconsistent proceedings with respect to it.

We think that our views on the question of the so-called cram down section of the statute [9] have been sufficiently presented in our former opinion at pp. 544 and 545, and

7. "Permissible capitalizations are not determined by us solely, as these petitioners apparently assume, by capitalizing assumed earnings at stated percentages. The determinations of capital structures for reorganized railroads are not such simple matters. Such computations admittedly are important checks or steps in the final determinations, but a careful reading of our fifth supplemental report will clearly show that many other factors were taken into consideration in determining the permissible capitalization of the debtor under a hypothetical reorganization and the compensation which the Coast Line should pay for the debtor's properties." 281 I.C.C. 203.

8. Case v. Los Angeles Lbr. Co., 308 U.S. 106, 115, 60 S.Ct. 1, 84 L.Ed. 110; Reconstruction Finance Corp., v. Denver & Rio Grande, 328 U.S. 495, 66 S.Ct. 1282,

1384, 90 L.Ed. 1400; Securities & Exchange Comm., v. Central Ill. Securities Corp., 338 U.S. 96, 110, 111, 113, 127, 69 S.Ct. 1377, 93 L.Ed. 1836.

9. Subdiv. (e) of Sec. 205, Title 11 U.S.C.A. "Court hearing after approval by Commission; acceptance of plan by creditors and stockholders; confirmation of plan by court; valuation of property", which provides that if the plan has not been accepted by the creditors and stockholders, the judge may nevertheless confirm the plan if he is satisfied and finds after hearing that it makes adequate provision for fair and equitable treatment for the interests or claims of those rejecting it; that such rejection is not reasonably justified in the light of the respective rights and interests of those rejecting it, and all the relevant facts.

that no useful purpose will be served by further discussing them at length here. We think, though, that we should restate, what we stated in that opinion: that that section has to do with individual complaints of unequal and unlike treatment; and that the refusal of the 5 percent bondholders, when called upon under subdivision (e) to accept the plan merely because they prefer an internal reorganization, will not justify the trial judge in refusing to approve it under the so-called cram down provision of the statute.

It is not meant by this to say that if conditions should so change between now and the time the plan is to be put up for final acceptance under subdivision (e) that the plan would no longer be a fair and reasonable one, the court could not consider the changed facts and act accordingly. It is to say, though, as has been so often already said in this case by both the trial judge on the former opinion and by this court, that the set and stubborn determination by any or all of the creditors to withhold approval of the plan, merely because they bought their bonds for the purpose of obtaining control of the railroad and will not agree to any other plan under subsection (e), the "cram down" section, may not be accepted as adequate or lawful grounds for opposition.

The judgment is reversed and the cause is remanded with directions to approve the plan and thereafter to proceed under the statute not inconsistently herewith.

RUSSELL, Circuit Judge, with whom BORAH, Circuit Judge, joins, dissenting.

So much has already been written in the several appearances of this matter before the Interstate Commerce Commission and the Courts that the temptation is present to avoid further cumbering the record by merely noting dissent from the judgment and there letting the matter rest. However, that which is here the controlling question, in the sense that upon its determination depends all further assumed authority to proceed with the details of the matter, is of such far reaching importance and so fundamental to the protection of property rights against invasion under the guise of serving the public interest, that at least some bare outline of the reason for disagreement seems obligatory. Such question is present in this case in the form of the claimed power of the Interstate Commerce Commission, in proposing a plan of reorganization under the provisions of Section 77 of the Bankrutpcy Act, to require the equitable owners of the debtor, who are united in opposition to such a plan, to surrender their interests in a going and efficiently operated railroad, for undesired rights in another railroad system. While the result of the proposed plan, which the majority now approves, may be denominated a "merger", as well said by the trial Judge, "[i]t is in fact an enforced, noncompetitive sale of F. E. C. to A. C. L., a wholly unrelated corporation, over the objections of 99% of the present bondholders whose property interests are at stake, and who do not wish to sell, and over the active protest of F. E. C. employees whose jobs and seniority rights are also at stake, and who do not wish to be forcibly transferred to Atlantic Coast Line. The plan virtually gives A. C. L. the power of eminent domain over F. E. C., with authority to pay, not in cash, but 90% in Coast Line securities of debatable value." It is these equitable owners of the property who would be entitled to the stock of the reorganized Florida East Coast Railroad. There is no question here of the relative rights of the creditors among themselves, nor is this the usual case where there is objection by only minority interests. The bald proposition established by the majority opinion is that the court's power in bankruptcy authorizes the taking, against the wishes of the overwhelming majority of the refunding bondholders, of their existing rights, requiring acceptance by them of an entirely different and unrelated security which they do not desire. This holding poses a serious constitutional question as to whether the court's power in bankruptcy could thus be extended to force a merger consistent with the Fifth Amendment. However, in my view of the case I do not reach the constitutional question because here it is clear from the history of the legislation of Section 77, that the Commission has undertaken to exercise

a power which the Congress never intended to confer on the Commission. This was well pointed out by Judge Sibley in his decision while sitting as District Judge in a former proceeding in this matter. In re Florida East Coast Railway Co., D.C., 81 F.Supp. 926. This view was expressly approved by the writer in his special concurrence upon the former appeal of this case. Atlantic Coast Line v. St. Joe Paper Co., 5 Cir., 179 F.2d 538, 545. It is reaffirmed today.

Rehearing denied; BORAH and RUSSELL, Circuit Judges, dissenting.